**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

RICHARD KEARNEY,                                              No. 9:15-CV-824
                                                             (GLS/CFH)

                              Plaintiff,

         v.

DR. ADAMS, et al.,

                              Defendants.

_____


**APPEARANCES:**                          **OF COUNSEL:**

Richard Kearney
03-A-4948
Green Haven Correctional Facility
P.O. Box 4000
Stormville, New York 12582
Plaintiff pro se

Hon. Eric T. Schneiderman              JOHN F. MOORE, ESQ.
Attorney General for the               Assistant Attorney General
   State of New York
The Capitol
Albany, New York 12224
Attorney for Defendants

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

         Plaintiff pro se Richard Kearney ("plaintiff"), an inmate  who  was,  at  all  relevant

times, in the custody of the New York State Department of Corrections and Community

_____

         [1] This matter was referred to the undersigned for Report-Recommendation and Order pursuant to
28 U.S.C. § 636(b) and N.D.N.Y. L.R. 72.3(c).

Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983, alleging that defendants Dr. Adams, Corrections Officer ("C.O.") R. Noelting, C.O. S. Muller – who, at all relevant times, were employed at Clinton Correctional Facility ("Clinton") – and DOCCS violated his constitutional rights under the Eighth Amendment, as well as Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. Dkt. No. 1 ("Compl.").[2] Presently pending before the Court is defendants' Motion for Summary Judgment pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 56. Dkt. No. 66. Plaintiff filed a response in opposition to the motion, and defendants filed a reply. Dkt. Nos. 72, 73. For the following reasons, it is recommended that defendants' motion be granted.

## I. Background

### A. Plaintiff's Recitation of the Facts

The facts are related herein in the light most favorable to plaintiff as the nonmoving party. See subsection II.A. infra. Plaintiff alleges that on July 12, 2012, he submitted a request for reasonable accommodation to nonparty Deputy Superintendent of Programs J.E. Proulx because of his "severely mobility disabling conditions." Compl. ¶ 11. On July 17, 2012, Dr. Adams conducted a physical examination of plaintiff. Id. ¶ 12. Dr. Adams directed plaintiff to remove his knee braces and lay down on an examination table. Id. Dr. Adams proceeded to examine plaintiff's legs, which included "snatching, pulling, pushing, and twisting[ ] plaintiff's legs." Id. Dr. Adams called C.O. Noelting and C.O. Muller into the

---

[2] Only plaintiff's Eighth Amendment and ADA claims survived the Court's sua sponte review. See Dkt. No. 11 at 14.

examination room and stated that plaintiff refused to leave.  Id. ¶ 13.  Plaintiff informed C.O. Noelting and C.O. Muller that he did not refuse to leave, and requested his knee braces and crutches from Dr. Adams.  Id. ¶ 14.  Dr. Adams stated, "No!  He can walk without those – (make him walk)."  Id.  C.O. Noelting and C.O. Muller "snatched plaintiff up from the examination table, and shoved plaintiff towards the door . . . . Plaintiff took a few steps before he colapsed [sic] under the severe/unbearable pains from his spinal nerve in his pelvis backbone area."  Id. ¶ 15.  Dr. Adams continued to direct C.O. Noelting and C.O. Muller to make plaintiff walk.  Id.  C.O. Noelting and C.O. Muller attempted to force plaintiff to walk "using abusive and brutal painful methods."  Id. ¶ 16.  Plaintiff was hit in the head with a night stick, leaving a swollen lump and red mark on his left temple area.  Id.  Dr. Adams only directed that C.O. Noelting and C.O. Muller stop forcing plaintiff to walk after "blood beg[a]n to gush from plaintiff's elbows, and from other areas behind the arms from lacerations, opened gashes, and abrasions."  Id. ¶ 17.

## B. Defendants' Recitation of the Facts

In support of this motion, defendants filed a Statement of Material Facts.[3]  On July

---

[3] Local Rule 7.1(a)(3) states:

Summary Judgment Motions

Any motion for summary judgment shall contain a Statement of Material Facts.  The Statement of Material Facts shall set forth, in numbered paragraphs, each material fact about which the moving party contends there exists no genuine issue. Each fact listed shall set forth a specific citation to the record where the fact is established. The record for purposes of the Statement of Material Facts includes the pleadings, depositions, answers to interrogatories, admissions and affidavits.

The opposing party shall file a response to the Statement of Material

9, 2012, plaintiff arrived at Clinton.  Dkt. No. 66-9 ¶ 2.  On or about July 16, 2012, plaintiff submitted a "Request for Reasonable Accommodation form," contending that he was "substantially limited in ability to stand/walk, - due to spine/bilateral knees . . . depended on braces/crutches."  Id. ¶¶ 3, 4.  Specifically, plaintiff requested a shower with a bench seat and grab bars, as well as outdoor exercise/recreation.  Id. ¶ 4.  In response to his accommodation request, plaintiff was placed on "call-out" to the medical clinic.  Id. ¶ 5.  On July 17, 2012, Dr. Adams evaluated plaintiff in conjunction with the accommodation request.  Id. ¶ 6.

In the Ambulatory Health Record ("AHR") notes, Dr. Adams stated:

> Pt. seen for need [of] crutches, knee sleeve(s) etc.  "Can't walk w/o assistive devices" [.]  Watched [patient] walk back + forth to exam room w/ pivot R [right] + L [left], use of cane not w/ body swing, etc.  Gait somewhat stiffened.  Velcro + neophrine sleeves outside pants, Pt. was requested to remove sleeves.  He crossed each leg separately + removes sneakers + then easily slid sleeve down off w/ one hand.  Then bent over to replace sneakers and laced up.  His chart was reviewed. Noted MRI + xray of 2006; 2008. [Reviewed] Ortho opinion of 4/2008, 2005[.] [Reviewed] Pt. AHR [Ambulatory Health Record] for sleeve etc. Known SHU Upstate stay w/o crutches, etc.  His exam [showed] moderate Hypertrophy of R [right] + L [left] knee, little laxity, AP [anterior and posterior] med [medial] + lat [lateral], nontender.  Ø [No] effusions, Ø [no] pattelar pain, SLR [straight leg raising], DTR [deep tendon reflex], full figure four Ø [negative], Pt. sat up + lie down w/o issue of back, EMG

Facts. The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises. The non-movant's response may also set forth any additional material facts that the non-movant contends are in dispute. Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.

N.D.N.Y. L.R. 7.1(a)(3).

4

8/31/15.

Id. ¶ 7 (citation omitted).  Plaintiff contended that he could not walk without his crutches or knee sleeves.  Id. ¶ 8.  After watching plaintiff remove his knee sleeves, cross his legs, replace his sneakers, and sit up and lay down, Dr. Adams determined that plaintiff did not need braces or crutches.  Id. ¶¶ 10-13.  Based on Dr. Adams' review of plaintiff's medical records and the examination, "his clinical impression was that [p]laintiff was capable of ambulation without these assistive devices."  Id. ¶ 16.

During the examination, Dr. Adams directed plaintiff to stand and walk to evaluate his ambulation.  Dkt. No. 66-9 ¶ 19.  Plaintiff refused.  Id. ¶ 20.  Because of his refusal, Dr. Adams requested that plaintiff leave the room.  Id. ¶ 21.  Plaintiff refused to leave.  Id.  Dr. Adams then summoned security staff to remove plaintiff from the room.  Id. ¶ 22.  Dr. Adams drafted a memorandum in connection with a "Use of Force investigation," stating:

> On the above date at approximately 10:50 AM I was examining inmate Kearney 03A4948.  At this time I ordered inmate Kearney to stand and walk with me so he could be examined, inmate Kearney refused.  I then ordered inmate Kearney to leave.  Inmate Kearney would not comply with my orders therefore security staff was notified.

Id. ¶ 23.

On July 25, 2012, Dr. Adams completed the "medical verification" section of plaintiff's "Request for Reasonable Accommodations" form.  Dkt. No. 66-9 ¶ 24.  In the "Disability" section, Dr. Adams noted, "Could be addressed[,], pt [patient] refuses/most patients do OK w/ what he has but he exaggerates symptoms."  Id. ¶ 25.  On July 17, 2012, plaintiff was admitted to the infirmary, where he remained until he transferred from Clinton on October 7, 2012.  Id. ¶ 31.  On August 10, 2012, Clinton's Deputy

Superintendent for Program Services granted plaintiff's request for reasonable accommodations, allowing him a walker "to assist w[ith] ambulation and a recommendation for a flat facility setting." Id. ¶¶ 29-30. Prior to his transfer from Clinton, plaintiff received a walker and knee braces. Id. ¶¶ 32-33.

## II. Discussion[4]

### A. Legal Standards

### 1. Summary Judgment Standard

"A court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party has the burden of showing the absence of disputed material facts by providing the Court with portions of "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which support the motion. FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A fact is material if it may affect the outcome of the case as determined by substantive law, such that "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "In determining whether summary judgment is appropriate, [the Court will] resolve all ambiguities and draw all reasonable inferences against the moving party." Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

---

[4] All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

To avoid summary judgment, a non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Carey v. Crescenzi, 923 F.2d 18, 19 (2d Cir. 1991) (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)) (internal quotation marks omitted). A non-moving party must support such assertions by evidence showing the existence of a genuine issue of material fact. Id. "When no rational jury could find in favor of the non-moving party because the evidence to support is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." Gallo v. Prudential Services, Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).

Where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," . . . that a pro se litigant's submissions must be construed "liberally," . . . and that such submissions must be read to raise the strongest arguments that they "suggest," . . . . At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, . . . or arguments that the submissions themselves do not "suggest," . . . that we should not "excuse frivolous or vexatious filings by pro se litigants," . . . and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law . . . .

Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191-92 (2d Cir. 2008).

7

## 2. N.D.N.Y Local Rule 7.1(a)(3)

Local Rule 7.1(a)(3) requires a party moving for summary judgment to file and serve a Statement of Material Facts. See N.D.N.Y. L.R. 7.1(a)(3). "The Statement of Material Facts shall set forth, in numbered paragraphs, each material fact about which the moving party contends there exists no genuine issue." Id. The opposing party is required to file a response to the Statement of Material facts "admitting and/or denying each of the movant's assertions in matching numbered paragraphs." Id. "The Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert." Id. (emphasis omitted).

Defendants argue that plaintiff's response to their Statement of Material Facts does not comply with the Local Rules as "[t]he majority of [p]laintiff's responsive paragraphs . . . failed to respond to the assertions in [d]efendants' Rule 7.1 Statement of Material Facts." Dkt. No. 73-1 ("Def. Reply") at 5. Thus, defendants contend that "[t]hese paragraphs must be deemed admitted under the NDNY Local Rules." Id. at 5. The undersigned is not required to "perform an independent review of the record to find proof of a factual dispute." Prestopnik v. Whelan, 253 F. Supp 2d 369, 371 (N.D.N.Y. 2003) (concluding that the "plaintiff's suggestion that the transcript and videotape of the [incident] be reviewed to identify support for her Statement of Material Facts Not in Dispute does not cure her failure to comply with Rule 7.1(a)(3)."). Although the defendant argues, and the Local Rules provide, that the Court shall deem admitted any facts the nonmoving party fails to "specifically controvert," pro se plaintiffs are afforded special solicitude in this District and within the Second Circuit. N.D.N.Y. L.R. 7.1(a)(3); Def. Reply at 4-5; see subsection II (A)

8

supra.  Accordingly, in deference to plaintiff's pro se status, the Court will independently review the record when evaluating defendants' Motion for Summary Judgment, and "treat plaintiff's opposition as a response to" defendants' Statement of Material Facts.  Johnson v. Lew, No. 1:13-CV-1072 (GTS/CFH), 2017 WL 3822047, at *2 (N.D.N.Y. Aug. 30, 2017) ("Out of special solicitude to Plaintiff as a pro se civil rights litigant, however, the Court will treat his opposition as a response to Defendant's Rule 7.1 Statement, carefully reviewing it for any record-supported disputation of Defendant's Rule 7.1 Statement."); see Perry v. Ogdensburg Corr. Facility, No. 9:10-CV-1033 (LEK/TWD), 2016 WL 3004658, at *1 (N.D.N.Y. May 24, 2016) (determining that "although [p]laintiff failed to respond to the statement of material facts filed by [d]efendants as required under Local Rule 7.1(a)(3), the Court would invoke its discretion to review the entire record when evaluating the parties' respective Motions for summary judgment.").

**B. Exhaustion**

Defendants contend that plaintiff failed to exhaust his administrative remedies as to his Eighth Amendment and ADA claims.  Dkt. No. 66-10 ("Def. Mem. of Law") at 20-26. In opposition, plaintiff claims that he exhausted his administrative remedies by filing two grievances — dated August 6, 2012 and August 14, 2012 — which he appealed to the Central Office Review Committee ("C.O.R.C.").  Dkt. No. 72-1 ("Pl. Opp.") at 8.  Plaintiff also seems to suggest that the grievance process was unavailable.  See id. at 8-10.  In reply, defendants argue that "[p]laintiff attempts to slip past the exhaustion prerequisite by citing to his grievance no. CL-62663-12, which contains no reference to his July 17[th]

9

medical visit or any claimed use of force." Def. Reply at 7.  Moreover, defendants contend that plaintiff fails to allege specific facts regarding the unavailability of the grievance program. Id. at 5-6.

On or about August 6, 2012, plaintiff filed a grievance, CL-62663-12, requesting that his knee braces and crutches be returned. Dkt. No. 66-9 ¶¶ 37-38.  On August 14, 2012, plaintiff filed a second grievance seeking the return of his knee braces and crutches. Id. ¶¶ 39, 41.  The Clinton Inmate Grievance Resolution Committee ("IGRC") consolidated the August 6, 2012 and August 14, 2012 grievances. Id. ¶ 40.  On August 22, 2012, the IGRC responded to plaintiff's combined grievance CL-62663-12, stating that, "[a]n investigation has revealed the grievant is currently housed in the hospital.  Due to grievant's current housing location he will not be given his medical devices back. As of 8/21/12 it is determined that grievant has his legal work." Id. ¶ 44 (citation omitted).  Plaintiff appealed the IGRC decision to the Superintendent. Id. ¶ 45.  On September 13, 2012, nonparty Superintendent Thomas LaValley concluded plaintiff had been given a walker to assist his ambulation, and that a new knee brace had been ordered and they were "waiting for it to come in." Id. ¶¶ 46-47 (citation omitted).

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust any administrative remedies available to him or her before bringing an action for claims arising out of his or her incarceration. See Porter v. Nussle, 534 U.S. 516, 524 (2002); see also Woodford v. Ngo, 548 U.S. 81, 82 (2006).  The exhaustion requirement applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter, 534 U.S.

at 532).  Further, the exhaustion requirement applies even where the prisoner seeks relief not available in the administrative grievance process, such as monetary damages.  Id. at 524.  To exhaust administrative remedies, the inmate must complete the full administrative review process set forth in the rules applicable to the correctional facility in which he or she is incarcerated.  See Jones v. Bock, 549 U.S. 199, 218 (2007) (internal citation omitted).

Although the Supreme Court has deemed exhaustion mandatory, the Second Circuit has recognized that "certain caveats apply."  Ruggiero v. Cty. of Orange, 467 F.3d 170, 175 (2d Cir. 2006) (citation omitted).  The Supreme Court recently held that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement."  Ross v. Blake, ___ U.S. ___,136 S. Ct. 1850, 1862 (2016).  Thus, the "special circumstances" exception in Hemphill v. New York, 680 F.3d 680, 686 (2d Cir. 2004) is no longer consistent with the statutory requirements of the PLRA.  Williams v. Priatno, 829 F.3d 118, 123 (2d Cir. 2016).[5]

Although Ross eliminates the "special circumstances" exception, courts must still consider the PLRA's "textual exception to mandatory exhaustion."  Ross, 136 S. Ct. at 1858.  Under this exception, courts must determine whether administrative remedies were "available" to a prisoner.  Id.  The Supreme Court identified three circumstances where administrative remedies may be unavailable to a prisoner.  First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may

---

[5]  In Williams v. Priatno, the Second Circuit debated Ross's effect on Hemphill's estoppel exception.  See Williams, 829 F.3d at 123.  The Williams Court stated that "Ross largely supplants our Hemphill inquiry by framing the exception issue entirely within the context of whether administrative remedies were actually available to the aggrieved inmate."  Id. (citing Ross, 136 S. Ct. at 1858-59).

promise) it operates as a simple dead end — with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. at 1859 (citing Booth v. Churner, 532 U.S. 731, 736, 738 (2001)).   "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id.  Lastly, administrative remedies are unavailable where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1860.

### 1. Did Plaintiff Exhaust his Administrative Remedies?

There is no genuine dispute that at all relevant times, DOCCS had in place a three-step inmate grievance program.  N.Y. COMP. CODES R. & REGS. tit 7, § 701.5.[6]  Both parties concede that plaintiff completed the first level of the grievance process – filing a grievance with the IGRC – which was properly recorded, assigned a grievance number, and decided.  Def. Mem. of Law at 23; Pl. Opp. at 9.  Moreover, it is clear that on August 22, 2012, plaintiff appealed the IGRC's decision to the Superintendent.  Dkt. No. 66-4 at 8.  However, the parties disagree as to whether the subject matter of grievance CL-62663-12 constitutes proper exhaustion of plaintiff's Eighth Amendment and ADA claims.  See

---

[6] First, the inmate must file a complaint with an inmate grievance program ("IGP") clerk within twenty-one days of the alleged incident.  N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(a)(1).  An IGP representative has sixteen calendar days to informally resolve the issue.  Id. § 701.5(b)(1).  If no informal resolution occurs, the IGRC must hold a hearing within sixteen days of receipt of the grievance and must issue a written decision within two working days after the conclusion of the hearing.  Id. §§ 701.5(b)(2)(i)-(ii).  If the determination is unfavorable to the inmate, the inmate may appeal the IGRC's determination to the facility superintendent within seven calendar days of receipt of the determination.  Id. § 701.5(c)(1).  If the superintendent's determination is unfavorable, the inmate may appeal to CORC within seven days after receipt of the superintendent's determination.  Id. §§ 701.5(d)(i)-(ii).  CORC must review each appeal, render a decision on the grievance, and transmit its decision to the facility, with reasons stated, for the [inmate], the grievance clerk, the superintendent, and any direct parties within thirty (30) calendar days from the time the appeal was received."  Id. § 701.5(d)(3)(ii).

Def. Mem. of Law at 23-26.

DOCCS records establish that grievance CL-62663-12 pertains to the return of plaintiff's knee braces and crutches.  Dkt. No. 66-4 at 3-6.  Although plaintiff titled his August 6, 2012 grievance "to [sic] use of force," plaintiff does not allege in this grievance that defendants subjected him to an improper use of force.  See id.  Clinton Inmate Grievance Program Supervisor Christine Gregory declared that "[p]laintiff never filed a grievance relating to [d]efendant officers Noetling and/or Muller, nor Dr. Adams for use of excessive force on or about July 17, 2012, including any grievance relating to force used during any medical examination of [p]laintiff and/or removal of [p]laintiff from an examination room."  Dkt. No. 66-3 ("Gregory Decl.") at 2.  Therefore, to the extent that plaintiff argues that his filing of grievance CL-62663-12 amounts to exhaustion of his excessive force claim against C.O. Noetling, C.O. Muller, or Dr. Adams, the record establishes that this grievance is silent as to that conduct.  See Dkt. No. 66-4 at 3-6.  Thus, plaintiff's filing of grievance CL-62663-12 does not serve to exhaust plaintiff's administrative remedies on his excessive force claims. Accordingly, the undersigned concludes that plaintiff failed to exhaust his administrative remedies as to his excessive force claims.

Insofar as plaintiff contends that grievance CL-62663-12 pertains to his ADA claim, defendants argue that plaintiff did not exhaust his administrative remedies because he failed to appeal that grievance to CORC.  See Dkt. No. 66-10 at 24.  Assistant Director of the Inmate Grievance Program ("IGP") Jeffrey Hale declared that of the eleven CORC appeals plaintiff filed prior to March 24, 2016, none included the issues or claims raised in

the complaint in this action.  Dkt. No. 66-5 ("Hale Decl.") at 2.  In opposition, plaintiff proffers a letter dated September 6, 2012 which he contends constitutes an appeal to CORC.  Dkt. No. 72-2 at 2.  In the September 6, 2012 letter, plaintiff states that because he had not received an answer from the Superintendent, he "herein [wishes to] appeal to CORC . . . on the issues of grievant's grievance dated 8/14/2012."  Id.[7]  However, the undersigned determines that plaintiff failed to use the grievance process properly.  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."  Woodford, 548 U.S. at 101.  The superintendent has twenty calendar days from the time he or she receives the appeal to issue a decision.  N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(c)(3)(i).  DOCCS' records show that plaintiff signed the appeal statement on the IGRC decision on August 22, 2012.  Dkt. No. 66-4 at 8.  Plaintiff sent his September 6, 2012 letter to CORC fourteen days after filing his appeal, and before the Superintendent's time to respond had expired.  Id.  Such early filing of an appeal is improper and the early appeal does not constitute exhaustion under the proper grievance channels.  See Aikens v. Jones, No. 12 Civ. 1023(PGG), 2015 WL 1262158, at *4 (S.D.N.Y. Mar. 19, 2015) (finding that the plaintiff failed to properly exhaust his administrative remedies when he submitted his appeal to the Superintendent

---

[7] Clinton IGRC consolidated plaintiff's August 14, 2012 grievance with his previously-filed August 6, 2012 grievance.  Dkt. No. 66-9 ¶ 40.  In both filings, plaintiff requested the return of his bilateral knee braces and crutches.  Id.  ¶¶ 37-38, 39, 41.

14

before the IGRC's time to respond to his grievance had expired).[8]

Moreover, insofar as plaintiff suggests letters that he wrote to Deputy Superintendent Proulx and the Facilities Health Services Director ("FHSD") regarding the return of his knee braces and crutches serve to exhaust his administrative remedies, these letters were neither addressed nor sent to the Superintendent or CORC as part of the established grievance procedures.  Dkt. No. 66-2 at 59, 221.  The letters that plaintiff did send to the Superintendent requested copies of his medical records, and do not mention plaintiff's grievances.  See id. at 46-55.  Thus, the letters plaintiff sent to the Superintendent do not constitute an attempt at exhaustion.  Id.  It is well-established in the Second Circuit that any informal resolution or relief outside of the administrative procedures does not satisfy exhaustion requirements.  See, e.g., Macias v. Zenk, 495 F.3d 37, 43 (2d Cir. 2007); Day v. Chaplin, 354 F. App'x 472, 474 (2d Cir. 2009) (summary order) (noting that informal letters sent to prison officials "do not conform to the proper administrative remedy procedures.").  Thus, because plaintiff's letters to Proulx and the FHSD were to officials outside of the grievance chain of command, and the letters plaintiff sent to the Superintendent did not involve the issues raised in plaintiff's grievances, they do not serve to satisfy the exhaustion requirement.

---

[8] Insofar as plaintiff attempts to raise new issues in his September 6, 2012 by stating that he is herein submitting further grievance . . . [that he is] still being affected by the same issues of deprivation, of sufficiently serious medical needs[ ] of [his] bilateral knee braces," plaintiff cannot raise new issues for CORC's consideration in his appeal statement.  See Fox v. Labatte, No. 9:15-CV-144 (LEK/DJS), 2016 WL 8716662, at *4 (N.D.N.Y. Mar. 11, 2016) ("Furthermore, [p]laintiff cannot circumvent the procedures set forth by the facility by submitting a backdoor appeal to CORC by raising the issue for the first time, as he did with grievance number ECF 26147-14."); Robinson v. Rome, No. 9:10-CV-0993 (LEK/CFH), 2013 WL 3328222, at 8 (N.D.N.Y. July 2, 2013) ("One appeal raised assault allegations for the first time that were not in the originating grievance.  Thus, CORC declined to consider those allegations and advised Robinson to file a separate grievance raising those issues.").

However, as part of their moving papers, defendants proffer plaintiff's response to their December 1, 2016 discovery letter.  See Dkt. No. 66-2 at 204-227.  Plaintiff's response included the September 13, 2012 Superintendent's decision and plaintiff's signed appeal statement, dated September 17, 2012, requesting CORC review.  See id. at 217.  Plaintiff testified that he appealed the September 13, 2012 Superintendent's decision, and that it was missing from the documents defendants provided to him at his deposition, further noting that CORC "never answered" his appeal.  Id. at 157, 161, 162.[9]

Viewing the facts in the light most favorable to plaintiff, the record suggests that plaintiff submitted his CORC appeal, but it was unfiled and unanswered.  See Dkt. No. 66-2 at 217.  By contrast, defendants argue that plaintiff never appealed to CORC. See Dkt. No. 73-1 at 9-11.  This creates an issue of fact as to whether the grievance process was available to plaintiff and whether plaintiff attempted to exhaust his administrative remedies as to grievance CL-62663-12.  See Williams v. Priatno, 829 F.3d 118, 126 (2d Cir. 2016) (concluding that "the process to appeal an unfiled and unanswered grievance is prohibitively opaque, such that no inmate could actually make use of it."); Thaxton v. Simmons, No. 9:10-CV-1318 (MAD/RFT), 2013 WL 4806457, at *4 (N.D.N.Y. Sept. 9, 2013) ("[A] question of fact exists as to whether [p]laintiff never filed his initial grievance on April 29, as [d]efendants claim, or that, as [p]laintiff claims, he filed a timely grievance that was lost or tampered with by [d]efendants.  Such credibility assessments are to be

---

[9] The undersigned notes that there is some confusion within the record as to whether the Superintendent responded to grievance CL-62663-12 or another, unspecified grievance that plaintiff filed. Plaintiff testified that the Superintendent never answered grievance CL-62663-12, but "somewhere down the road . . . . answered another one."  Dkt. No. 66-2 at 157.  The Superintendent's September 13, 2012 decision clearly states that he is responding to grievance CL-62663-12.  See id. at 217.

16

resolved by a trier of fact."). However, although exhaustion is unclear, even if plaintiff had exhausted his administrative remedies, plaintiff's ADA claim fails on the merits. See Gomez v. Chill, No. 11-CV-6844 (CM)(JLC), 2015 WL 1853110, at *6 (S.D.N.Y. Apr. 17, 2015) ("[A] hearing is not necessary to resolve [exhaustion] at this time because, as discussed in the following sections of this Report, Gomez's claims against both Rabbi Chill and Koskowski with respect to occurrences while Gomez was in the SHU fail on the merits."); Liberati v. Gravelle, No. 9:12-CV-00795 (MAD/DEP), 2013 WL 5372872, at *9 (N.D.N.Y. Sept. 24, 2013) ("[B]ecause I recommend that defendant's motion be granted based on a finding that no reasonable factfinder could conclude that defendant violated plaintiff's rights, a determination of whether plaintiff should be precluded from bringing this action based on a failure to exhaust administrative remedies is not necessary."). Accordingly, it is recommended that defendants' Motion for Summary Judgment for failure to exhaust administrative remedies be granted as to plaintiff's Eighth Amendment excessive force claims, and denied as to plaintiff's ADA claim.[10]

To the extent that plaintiff's complaint raises an Eighth Amendment deliberate indifference claim against Dr. Adams, defendants do not address whether plaintiff exhausted such claim. See generally Def. Mem. of Law. Because exhaustion is an affirmative defense, not a jurisdictional prerequisite, the undersigned is not required to address whether plaintiff exhausted his administrative remedies as to his deliberate indifference claim. See Harnett v. Barr, 538 F. Supp. 2d 511, 527 n.27 (N.D.N.Y. 2008)

---

[10] As noted, despite recommending that the Court deny defendants' motion for failure to exhaust as it relates to plaintiff's ADA claim, the undersigned does recommend that the motion be granted on the merits. See subsection II.C. supra, at 18-26.

("Exhaustion is an affirmative defense that must be raised by defendants. It is the defendants' burden to show that plaintiff has failed to exhaust . . . .") (citing Jones v. Bock, 549 U.S. 199, 216 (2007) (concluding that exhaustion is not a jurisdictional prerequisite)). Even if the undersigned were to assess exhaustion of plaintiff's Eighth Amendment deliberate indifference claim, the undersigned would conclude that plaintiff arguably raised a deliberate indifference argument against Dr. Adams in grievance CL-62663-12, and decline to recommend dismissal of the claims for failure to exhaust for the same reasons discussed in the ADA exhaustion analysis. See subsection II.B.1. supra, at 13-17. However, as with the ADA claim, although exhaustion is unclear, the undersigned concludes that plaintiff's Eighth Amendment deliberate indifference claim fails on the merits. See Liberati, 2013 WL 5372872, at *9.

## C. ADA

Plaintiff contends that DOCCS violated his rights under Title II of the ADA by failing to provide him a reasonable accommodation. See generally Compl. Defendants argue that (1) the ADA does not provide for liability against individual defendants; (2) plaintiff is unable to "abrogate sovereign immunity protection under the ADA" because he cannot establish DOCCS' discriminatory animus or ill will; and (3) they provided plaintiff reasonable accommodations. Def. Mem. of Law at 13-20. Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To state

a claim under the ADA, an inmate must demonstrate that

> (1) he or she is a "qualified individual with a disability"; (2) he or she is being excluded from participation in, or being denied the benefits of some service, program, or activity by reason of his or her disability; and (3) [the facility that] provides the service, program or activity is a public entity.

Clarkson v. Coughlin, 898 F. Supp. 1019, 1037 (S.D.N.Y. 1995); 42 U.S.C. § 12132.

As a threshold matter, this Court's February 29, 2016 Decision and Order made clear that plaintiff's ADA claim survives only against DOCCS, and the Court dismissed the ADA claim against the individual defendants. Dkt. No. 9 at 14. Therefore, DOCCS is the only party against which this claim currently remains. See Dkt. No. 11 at 14. Defendants accept for the purposes of this motion that plaintiff is a "qualified individual with a disability" under the ADA, Def. Mem. of Law at 15, and it is undisputed that that DOCCS is a public entity. See Pl. Opp. at 2; Def. Mem. at 13. Therefore, the undersigned must assess whether plaintiff was "excluded from participation in or [ ] denied the benefits of some service, program, or activity by reason of his [ ] disability." Clarkson, 898 F. Supp. at 1037.

Plaintiff seems to suggest that DOCCS failed to provide him reasonable accommodations for his "severe mobility disabling conditions" by depriving him of his therapeutic bilateral knee braces and crutches. See Compl. ¶¶ 3, 9, 10, 11; Pl.'s Opp at 3. In assessing whether a public entity failed to provide a qualified individual with reasonable accommodations, the Court must "ask whether a plaintiff with disabilities 'as a practical matter' was denied 'meaningful access' to services, programs or activities to which he or she was 'legally entitled.'" Wright v. N.Y.S. Dep't of Corr., 831 F.3d 64, 72 (2d Cir. 2016) (quoting Henrietta D. v. Bloomberg, 331 F.3d 261, 272 (2d Cir. 2003)). "A

reasonable accommodation must provide effective access to prison activities and programs . . . . An accommodation is not plainly reasonable if it is so inadequate that it deters the plaintiff from attempting to access the services otherwise available to him." Id. (internal citations omitted). "'Reasonable' is a relational term: it evaluates the desirability of a particular accommodation according to the consequences that the accommodation will produce. This requires a fact-specific, case-by-case inquiry." Fulton v. Goord, 591 F.3d 37, 44 (2d Cir. 2009).

Thus, to state a prima facie claim for denial of reasonable accommodation, plaintiff must demonstrate that DOCCS' failure to provide him with his bilateral knee braces and crutches denied him meaningful access to programs and services. See Wright, 831 F.3d at 72. The record does not support a determination that DOCCS denied plaintiff a reasonable accommodation. It is undisputed that on July 16, 2012, plaintiff submitted a "Request for Reasonable Accommodation" form stating that he was "substantially limited in ability to stand/walk" due to his "spine/bilateral knees," and that he "depended on crutches." Dkt. No. 66-8 at 2.[11] Moreover, the record is clear that for an undetermined period of time during plaintiff's incarceration at Clinton — which lasted from July 17, 2012 until October 2012 — plaintiff did not have access to his crutches and bilateral knee braces. See Pl. Opp. at 3; Dkt. No. 66-2 at 140-41. However, plaintiff's complaint fails to identify any programs or services that he was excluded from because of DOCCS' alleged failure to accommodate his disability. Although plaintiff testified that he was "locked in

---

[11] Plaintiff also requested a "shower with bench seat/grab bars/outdoor exercise/rec." Dkt. No. 66-8 at 2. However, plaintiff's ADA claim is not based on these items. See Compl. ¶ 10.

SHU segregation,"[12] and denied access to religious services, his Bible, the law library, and personal items, the record does not suggest that plaintiff was excluded from these programs or services due to his disability or inability to ambulate without his crutches or bilateral knee braces. See Dkt. No. 66-2 at 141-44. Moreover, plaintiff's complaint is silent as to the denial of religious services, Bible, law library, and other personal items, and such claims cannot be raised for the first time in opposition to a motion. See Cohen v. N.Y., 481 F. App'x 696, 697 (2d Cir. 2012) (summary order) ("Finally, because Cohen did not present a recusal claim in her amended complaint, raising it only in her opposition [ ], the district court was not required to consider it."); Mora v. Hughes, 238 F. Supp. 3d 438, 443 n.2 (W.D.N.Y. 2017) ("The Court is not required to consider claims that are raised for the first time in opposition to a motion.").

Instead, plaintiff's alleged denial of benefits or privileges centers on Dr. Adams' medical opinion that crutches and knee braces were not medically necessary, and plaintiff's disagreement with Dr. Adams' discontinuance of those items. Stated differently, plaintiff's crutches and bilateral knee braces were not retained because of plaintiff's disability, but because Dr. Adams believed, based on his medical examination of plaintiff,

---

[12] Defendants maintain that plaintiff remained in the infirmary during his incarceration at Clinton, and do not reference any segregated confinement. See Def. Mem. of Law at 16. Plaintiff claims that he was placed in "SHU segregation." Dkt. No. 66-2 at 141-44. The record suggests that plaintiff was keeplocked from July 17, 2012 until September 7, 2012, Dkt. No. 77-2 at 5, but the reason and the location of his keeplock confinement is unclear. Further, the record does not indicate whether plaintiff was in SHU at any time between July 17, 2012 to September 7, 2012. "Keeplock is a form of disciplinary confinement segregating an inmate from other inmates and depriving him of participation in normal prison activities." Green v. Bauvi, 46 F.3d 189, 192 (2d Cir. 1995); N.Y. COMP. CODES R. & REGS. tit. 7, § 301.6. SHU "consist[s] of single-occupancy cells grouped so as to provide separation from the general population . . . ." N.Y. COMP. CODES R. & REGS. tit 7, § 300.2(b). Inmates are confined in a SHU as discipline, pending resolution of misconduct charges, for administrative or security reasons, or in other circumstances as required. Id. at pt. 301.

that they were not medically necessary for plaintiff to stand and walk.  See generally Compl.; Dkt. No. 66-7 ("Adams Decl.") at 3-5.  Courts in this Circuit have held that "complaints about medical treatment are generally insufficient to state a claim under the ADA." Smith v. City of N.Y., No. 15-CV-4493 (RJS), 2016 WL 4574924, at *11 (S.D.N.Y. Sept. 1, 2016) (citing Burger v. Bloomberg, 418 F.3d 882, 883 (8th Cir. 2005) ("[A] lawsuit under the . . . Americans with Disabilities Act (ADA) cannot be based on medical treatment decisions.")); see Murray v. Ramineni, No. 08-CV-809 (DNH/DRH), 2011 WL 1315777, at *22 (N.D.N.Y. Mar. 3, 2011) ("[C]omplaints concerning medical treatment are insufficient to state a claim under the ADA."); Harrington v. Mid-State Corr. Facility, No. 9:09-CV-85 (TJM/DRH), 2010 WL 3522520, at *9 (N.D.N.Y. May 21, 2010) (same).  Therefore, to the extent that plaintiff's reasonable accommodation claim is based on Dr. Adams' decision to retain his bilateral knee braces and crutches during his incarceration at Clinton, such complaint is insufficient to state an ADA claim for denial of benefits and services.  See id. Moreover, plaintiff does not establish that the delay in receiving his walker "occurred because of his disability." Alster v. Goord, 745 F. Supp. 2d 317, 340 (S.D.N.Y. 2010) (concluding that the plaintiff failed to demonstrate that the defendants delay in providing him batteries for his hearing aids "occurred because of his disability."); see Schnauder v. Gibens, 679 F. App'x 8, 11 (2d Cir. 2017) (summary order) ("Schnauder's argument that denial of timely and meaningful medical treatment for his nose constituted a failure to provide a "reasonable accommodation" fails because the broken nose was not the reason he was unable to access medical services; rather, it was the reason he sought such services. In short, because he has not pleaded facts showing that denial of treatment was

attributable to bias based on disability.").

Even assuming plaintiff has demonstrated a denial of meaningful access to programs and services, the record shows that DOCCS provided plaintiff with reasonable accommodations. See Wright, 831 F.3d at 72 ("In order to establish a prima facie violation under these acts, [the plaintiff] must show[, in part, that] he was denied the opportunity to participate in or benefit from DOCCS's services, programs, or activities or DOCCS otherwise discriminated against him by reason of his disability."); Fulton, 591 F.3d at 43 ("A qualified individual can base a discrimination claim on . . . failure to make a reasonable accommodation.") (internal quotation marks and citations omitted). "Although a public entity must make 'reasonable accommodations,' it does not have to provide a disabled individual with every accommodation he requests or the accommodation of his choice." McElwee v. Cty. of Orange, 700 F.3d 635, 641 (2d Cir. 2012) (citing Fink v. N.Y.C. Dep't of Personnel, 53 F.3d 565, 567 (2d Cir. 1995)). Pursuant to the completed Request for Reasonable Accommodation form, on August 10, 2012, Deputy Superintendent of Programs J.E. Proulx granted plaintiff's request and issued plaintiff a walker and "a recommendation for a flat facility setting." Dkt. No. 66-8 at 2. On or about September 13, 2012, plaintiff received a walker, as noted in the Superintendent's decision of grievance CL-62663-12. Dkt. No. 66-4 at 9. The Superintendent's decision also notes that the facility "ordered plaintiff another knee brace" and were "waiting for it to come in." Id. Plaintiff testified that he received both the walker and the bilateral knee brace before transferring out of Clinton in October 2012. See Dkt. No. 66-2 at 132-33. Plaintiff's disagreement with DOCCS' decision to provide him with a walker rather than crutches, Dkt. No. 66-8 at 2, and

his request that the "ordered brace [be] the same velcro . . . in order to satisfy [his] injury/degenerative condition," Dkt. No. 66-2 at 217, do not amount to a failure to provide a reasonable accommodation. See McElwee, 700 F.3d at 641. DOCCS is not required to provide plaintiff with the specific accommodation he requests as long as the provided accommodation is meaningful. See id. Therefore, because plaintiff has not established that DOCCS denied him meaningful access to programs and services, it is recommended that defendants' Motion for Summary Judgment as to plaintiff's ADA claim be granted.

### 1. Eleventh Amendment Immunity

Defendants argue that "plaintiff cannot establish discriminatory animus or ill will on the part of DOCCS, such that sovereign immunity dissipates." Def. Mem. of Law at 15. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. AMEND. XI. "[D]espite the limited terms of the Eleventh Amendment, a federal court [cannot] entertain a suit brought by a citizen against his [or her] own State. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98 (1984) (citing Hans v. Louisiana, 134 U.S. 1, 21 (1890)).  Sovereign immunity can be abrogated by an act of Congress and, "[w]ith respect to claims arising under Title II of the ADA, it is clear from the language of the statute that Congress fully intended to abrogate state sovereign immunity . . . ." Kearney v. N.Y.S.D.O.C.S., No. 9:11-CV-1281 (GTS/TWD), 2013 WL 5437372, at *9 (N.D.N.Y. Sept. 27, 2013).  A plaintiff's ability to sue a state under Title II is tied to the

plaintiff's allegation that the defendants violated his Fourteenth Amendment rights.  See U.S. v. Georgia, 546 U.S. 151, 154 (2006) ("[I]nsofar as Title II creates a private cause of action for damages against the States for conduct that actually violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity."  In Rosen v. Pallito, the District of Vermont observed "a 'growing fracture' among courts in this Circuit as to how to determine valid abrogation of state sovereign immunity under Title II when no Fourteenth Amendment violation is alleged."  Rosen v. Pallito, No. 2:13-CV-277, 2017 WL 6513663, at *3 (D. Vt. Dec. 19, 2017) (citing Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis., 804 F.3d 178, 194 (2d Cir. 2015)).

> Before United States v. Georgia, the Second Circuit applied the approach articulated in Garcia v. S.U.N.Y. Health Sciences Center, which held that "Congress had exceeded its section five authority in enacting Title II, but that Title II suits could be limited to circumstances in which it had not." Bolmer v. Oliveira, 594 F.3d 134, 146 (2d Cir. 2010) (citing Garcia, 280 F.3d 98) . . . . Under this test, "Title II monetary claims against a state therefore require a showing of discriminatory animus or ill will to limit such suits to disparate treatment that violates the Equal Protection Clause of the Fourteenth Amendment or falls within the range of conduct Congress could otherwise prohibit pursuant to its prophylactic authority." Dean, 804 F.3d at 194.

> Post-Garcia, United States v. Georgia remanded a Title II private cause of action for the lower court to determine[, in part,] . . . insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid. 546 U.S. at 159. Georgia thus "explicitly left open the question of whether Congress may validly abrogate sovereign immunity with respect to a particular class of misconduct that violates Title II but does not violate the Fourteenth Amendment." Dean, 804 F.3d at 194. This "continued uncertainty . . . has led to a divergence in the approaches adopted by district courts," with some applying

<u>Garcia</u> and others questioning the validity of abrogation as suggested in <u>Georgia</u>. <u>Id.</u> at 194-95.

<u>Rosen</u>, 2017 WL 6513663, at *3-4.

Although plaintiff appeared to allege Fourteenth Amendment due process claims in conjunction with his Eighth Amendment claims in his complaint, the Court dismissed those claims in its February 29, 2016 Decision and Order.  <u>See</u> Dkt. No. 11 at 9 n.8 ("[I]nsofar as plaintiff asserts due process claims arising out of the same circumstances as his Eighth Amendment medical care and excessive force claims, these claims are subsumed and must be dismissed.") (internal quotation marks and citation omitted).  Therefore, plaintiff's complaint does not allege a Fourteenth Amendment claim to coincide with this Title II claim. However, because the undersigned has recommended that plaintiff's ADA claim be dismissed, the sovereign immunity inquiry must end.  <u>See</u> <u>Mary Jo C. v. N.Y.S. and Local</u> <u>Retirement Sys.</u>, 707 F.3d 144, 152 (2d Cir. 2013) ("[I]f a plaintiff cannot state a Title II claim, the court's sovereign immunity inquiry is at an end.") (citing <u>Buchanan v. Maine</u>, 468 F.3d 158, 172-73 (1st Cir. 2006)).

### D. Eighth Amendment

Insofar as plaintiff contends that Dr. Adams was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment by taking away his crutches and bilateral knee braces, this claim cannot survive.[13]  The Eighth Amendment forbids the

---

[13] Defendants' Motion for Summary Judgment does not address this argument.  However, this Court's February 29, 2016 Decision and Order seems to suggest that plaintiff's "Eighth Amendment medical care" claims survived sua sponte review.  Dkt. No. 11 at 9 n.8, 14.

infliction of "cruel and unusual punishments" on those convicted of crimes, "which includes punishments that involve the unnecessary and wanton infliction of pain." U.S. CONST. amend. VIII; Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994) (citing Gregg v. Georgia, 428 U.S. 153, 173 (1976)). "In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). The deliberate indifference standard consists of both an objective and subjective component. See Hathaway, 37 F.3d at 66. The objective component requires the plaintiff to demonstrate that his alleged medical need is "sufficiently serious." Id. The subjective component requires a showing that the defendant has acted with a "sufficiently culpable state of mind." Id.

Plaintiff does not allege that Dr. Adams failed to provide him with treatment, rather that Dr. Adams denied him adequate medical treatment by failing to provide him with crutches and delaying the return of his bilateral knee braces. See generally Compl. Even assuming, for the purpose of this motion, that plaintiff had a sufficiently serious deprivation of medical needs that satisfied the objective component and warranted protection under the Eighth Amendment, plaintiff has not demonstrated that Dr. Adams acted with a "sufficiently culpable state of mind." Hathaway, 37 F.3d at 66.

A prison official acts with a sufficiently culpable state of mind when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. "Deliberate

indifference is a mental state equivalent to subjective recklessness" which "requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." Id. (quotation marks omitted). A defendant "may introduce proof that he or she knew the underlying facts, but believed that the risk to which the facts gave rise was 'insubstantial or non-existent.'" Wright v. Genovese, 684 F. Supp. 2d 137, 154 (N.D.N.Y. 2010) (citing Farmer, 511 U.S. at 844)). Therefore, "the defendant's belief that his conduct posed no risk of serious harm need not be sound so long as it is sincere, and even if objectively unreasonable, a defendant's mental state may be nonculpable." Id. at 154-155 (quoting Salahuddin, 467 F.3d at 281) (internal quotation marks omitted).

Further, "[i]t is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment claim." Chance, 143 F.3d at 703. Therefore, any "disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of intervention, are not adequate grounds for a Section 1983 claim." Randle v. Alexander, 960 F. Supp. 2d 457, 481 (S.D.N.Y. 2013) .

Dr. Adams declared that he examined plaintiff on July 17, 2012 "to assess his need for crutches and knee sleeves" pursuant to plaintiff's Request for Reasonable Accommodation. Adams Decl. at 3. Although plaintiff claimed that he could not walk without these assistive devices, Dr. Adams declared, and noted in plaintiff's Ambulatory Health Record, that he "watched [plaintiff] walk with the assistive devices and his use of them did not match the movement in his body as it would, in [his] experience, for an

28

individual who needed them." Id. Dr. Adams further declared that plaintiff "remove[d] the knee sleeves . . . and he did so easily, crossing his legs as he did. He easily removed and replaced his sneakers, and sat up and laid down easily." Id. at 3-4. Dr. Adams ultimately concluded that he "observed no objective clinical finding which would necessitate the use of braces and crutches." Id. at 4. Thus, based on his direct observation and examination of plaintiff on July 17, 2012, Dr. Adams was not aware of a substantial risk of harm when he concluded that plaintiff "was capable of ambulation without these assistive devices." Id. at 4. Plaintiff's belief that Dr. Adams should have supplied him with his bilateral knee braces and crutches or examined him differently does not amount to Eighth Amendment deliberate indifference to serious medical needs. See Randle, 960 F. Supp. 2d at 481; Chance, 143 F.3d at 703 ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim."). Insofar as plaintiff argues that Dr. Adams is not an orthopaedic expert, and, therefore, is unqualified to assess his medical condition or less qualified than other doctors with whom plaintiff has treated, this argument must fail. Even if Dr. Adams' decision to retain plaintiff's bilateral knee braces and crutches caused plaintiff unintended harm, negligence is not actionable under section 1983. See Burroughs v. Petrone, 138 F. Supp. 3d 182, 211 (N.D.N.Y. 2015) ("Deliberate indifference requires more than negligence but less than conduct undertaken for the very purpose of causing harm.") (internal quotation marks and citation omitted); see Daniels v. Williams, 474 U.S. 327 (1986) (concluding that negligence is not a cognizable claim under section 1983); Kucharczyk, 95 F. Supp. 3d at 537 ("[M]ere negligence is not enough to state a

claim for deliberate indifference."). That Dr. Adams may have been negligent[14] in "diagnosing or treating" plaintiff's medical condition does not amount to deliberate indifference. Adams v. Rock, No. 9:12-CV-1400 (GLS/ATB), 2015 WL 1312738, at *7 (N.D.N.Y. Mar. 24, 2015) (citing Farmer, 511 U.S. at 835) ("Even negligence in diagnosing or treating an inmate's medical condition does not constitute deliberate indifference.").

Similarly, although plaintiff contends that Dr. Adams was aware of plaintiff's condition and need for bilateral knee braces and crutches because he had access to his medical records and treated him in the past, Dr. Adams declared that he reviewed plaintiff's medical records, and based on those records and the July 17, 2012 examination, he believed that plaintiff was "capable of ambulation." Adams Decl. at 4; see Wright v. Genovese, 684 F. Supp. 2d 137, 154 (N.D.N.Y. 2010) (citing Farmer, 511 U.S. at 844)) (demonstrating that a defendant "may introduce proof that he or she knew the underlying facts, but believed that the risk to which the facts gave rise was 'insubstantial or non-existent.'"). Thus, on July 17, 2012, Dr. Adams sincerely believed that retaining plaintiff's assistive devices "posed no risk of serious harm." Id. at 154-155.

Plaintiff fails to offer evidence supporting a finding that the delay in receiving new assistive devices resulted in an excessive risk to his health, especially as it is undisputed that he obtained a walker and new braces prior to his transfer from Clinton. Dkt. No. 66-9 Id. ¶¶ 32-33. Further, to the extent that Dr. Adams' assessment of plaintiff's need for assistive devices differs from that of previous medical providers, this allegation does not

---

[14] The undersigned makes no assessment as to whether plaintiff can state a claim as to negligence, a state-law claim not properly before this Court.

amount to a constitutional violation. See Chance, 143 F.3d at 703 ("[M]ere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment claim.") (internal citation omitted). Accordingly, insofar as plaintiff claims that Dr. Adams provided him inadequate medical care due to the delay in receiving new assistive devices, this claim cannot stand. As plaintiff has failed to demonstrate that Dr. Adams was deliberately indifferent to a serious medical need, it is recommended that defendants' Motion for Summary Judgment be granted on this ground.

### E. Qualified Immunity

Defendant argues that, even if plaintiff's constitutional claims are substantiated, he is entitled to qualified immunity. Dkt. No. 66-10 at 29-30. Qualified immunity shields public officials from being sued for conduct undertaken in the course of their duties so long as that conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (internal quotation marks and citation omitted); Eng v. Coughlin, 858 F.2d 889, 895 (2d Cir. 1988). However, even if the constitutional privileges "are so clearly defined that a reasonable public official would know that his actions might violate those rights, qualified . . . immunity might still be available . . . if it was objectively reasonable for the public official to believe that his acts did not violate those rights." Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991); Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990) (internal citations omitted). A court must first determine whether, if plaintiff's allegations are accepted as

true, there would be a constitutional violation.  See Saucier v. Katz, 533 U.S. 194, 201 (2001).  Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights were clearly established at the time of the alleged violation.  See Aiken v. Nixon, 236 F. Supp. 2d 211, 230 (N.D.N.Y. 2002).

Here, plaintiff has not established a constitutional violation to satisfy the first prong of the qualified immunity test.  See subsection II.B.C. supra.  Because there is no constitutional violation, the undersigned does not reach whether plaintiff's constitutional rights were clearly established at the time of the alleged violation.  See Aiken, 236 F. Supp. 2d at 230.  Accordingly, it is recommended that defendant's motion on this ground be granted.


### III. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby:

**RECOMMENDED**, that defendants' Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 (Dkt. No. 66) be **GRANTED**; and it is further

**RECOMMENDED**, that plaintiff's complaint (Dkt. No. 1) be **DISMISSED** in its entirety, with prejudice; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

 **IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall

be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED R. CIV. P. 6(a), 6(e), 72.[15]

Dated: February 8, 2018
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

---

[15] If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order was mailed to you to serve and file objections.  FED. R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Id. § 6(a)(1)(C).